UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOHN ROBINSON, JR.,

                               Plaintiff,                    **AMENDED COMPLAINT**

              -against-                                    **JURY TRIAL DEMANDED**

THE CITY OF NEW YORK, CORRECTION
OFFICER CAPTAIN DAVID LEVY, CORRECTION OFFICER
JAVAR CHEATHAM, CORRECTION OFFICER MARK
MOHR, and Unknown Correction Officers of Rikers Island,    ECF CASE
in their individual capacities and in their official capacities as
employees of the City of New York,

                               Defendants.
------------------------------------------------------------------------X

       Plaintiff, JOHN ROBINSON, JR., by his attorney, Kavin L. Edwards, Esq., alleges the following for this Complaint:

### NATURE OF THE ACTION

       1.     This is a civil rights action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, for deprivation of plaintiff's rights under the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution, Article 1, Sections 5, 6 and 12 of the New York State Constitution, and laws of the State of New York, against the City of New York, New York City Correction Officer Captain Levy, Correction Officer Javar Cheatham, Correction Officer Mark Mohr, and Unknown Correction Officers of Rikers Island in their individual capacities and official capacities. Plaintiff seeks compensatory and punitive damages, affirmative and equitable relief, an award of attorney's fees and costs, and such other relief as this Court deems equitable and just.

### JURISDICTION

2. This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 (3) and (4). Plaintiff also assert jurisdiction over the City of New York under 28 U.S.C. § 1331 and § 1367.

## VENUE

3. Under 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York because the events forming the basis of Plaintiff' complaint occurred in that District.

## NOTICE OF CLAIM

4. On December 23, 2013, plaintiff JOHN ROBINSON, JR. filed a Notice of Claim upon defendant City of New York, by delivering copies thereof to the person designated by law as a person to whom such claim may be served.

5. Plaintiff's Notice of Claim was in writing, individually sworn to by plaintiff, containing his name and address, and the name and address of his attorney.

6. The Notice of Claim set out the nature of the claims, the time when, the place where, and manner by which the claims arose, and the damages and injuries claimed to have been sustained by plaintiff.

7. The City of New York has failed to adjust the claims for plaintiff within the statutory time period.

8. This action is being commenced within one year and ninety days after the happening of the event upon which the claims are based.

## PARTIES

9.      JOHN ROBINSON, JR. ("Plaintiff Robinson") (Book and Case No.: 310-13-00386) is a citizen of the United States and, at all times relevant to the claims arising herein, was a resident of the State of New York.

10.     At all times relevant to this complaint, defendant Correction Officer Captain David Levy, #1644, ("defendant Captain Levy") was a duly appointed and acting Correction officer of the New York City Correction Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York, the City of New York, and the New York City Correction Department.

11.     At all times relevant to this complaint, defendant Correction Officer Javar Cheatham, #18905, ("defendant Cheatham") was a duly appointed and acting Correction officer of the New York City Correction Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York, the City of New York, and the New York City Correction Department.

12.     At all times relevant to this complaint, defendant Correction Officer Mark Mohr, #17362, ("defendant Mohr") was a duly appointed and acting Correction officer of the New York City Correction Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York, the City of New York, and the New York City Correction Department.

13.     At all times relevant to this complaint, each defendant Unknown Correction Officer ("defendant Unknown Correction Officer(s)") was a duly appointed and acting Correction officer of the New York City Correction Department, acting under

color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York, the City of New York, and the New York City Correction Department.

14. Defendant City of New York is a Municipal Corporation duly incorporated and existing pursuant to the laws of the State of New York, pursuant to Section 431 of its Charter. The City of New York has established and maintains a Correction Department as a constituent department or agency of defendant City of New York.

15. At all relevant times, the City of New York and its Correction Department employed all of the individual defendants.

16. At all relevant times, all of the individual defendants were agents, servants, and employees of the City of New York acting within the scope of their employment by defendant City of New York and its Correction Department.

## FACTS

17. On or about October 11th, 2013, Plaintiff was on Rikers Island awaiting trial in connection with certain criminal charges alleged against him.

18. At approximately 1:15 PM on October 11th, 2013 Plaintiff was in the day room area at the Anna M. Kross Center (AMKC) on Rikers Island. Also present were approximately 11 other inmates and New York City Correction Officer Smith.

19. Upon information and belief, Officer Smith stated that the whole house would need to lock in, but nobody moved from the place where we were eating lunch.

4

20.     Upon information and belief, Officer Smith alerted New York City Correction Officer Kit that nobody was moving, Officer Kit then notified the area supervisor and shortly thereafter, Captain Dawkins #1669 arrived.

21.     Upon information and belief, Captain Dawkins directed Officer Smith to lock in any inmate that wanted to lock in. The next thing that Plaintiff recalls is that someone picked up the radio and called for the Probe Team (Correction Officers with vests, helmets, and long sticks or batons).

22.     Upon information and belief, three members of the Probe Team arrived, defendant Cheatham, defendant Morh, and defendant Captain Levy.

23.     Upon information and belief, Captain Levy had a conversation with Captain Dawkins. Thereafter, Captain Levy stated that anyone who refuses to lock in is going to be sprayed with "OC" and that they were going to "thump your head" and you're still going to be locked in.

24.     Upon information and belief, Captain Levy walked up to an inmate and asked whether he was going to lock in, the inmate did not respond, and Captain Levy sprayed the inmate. Captain Levy and a member of the Probe Team attempted to grab the inmate.

25.     Upon information and belief, Plaintiff and other inmates stood up and started saying, no. Plaintiff stood up, but Plaintiff did not approach Captain Levy or the situation with the inmate. The Probe Team started spraying OC and stating, back up.

26.     Upon information and belief, the inmates started using chairs and tables as shields, and some were tossed as the Probe Team continued to spray OC.

27. Upon information and belief, Area Captain Dawkins stepped between the inmates and the Probe Team and said, no, no don't do this, I don't want it to go down this way. Captain Dawkins was facing the inmates, but Plaintiff believes she was directing her comments to the Probe Team.

28. Plaintiff asked Captain Dawkins, what did she expect, when she called the Probe Team to handle the inmates?

29. Upon information and belief, one of the Probe Team members said he didn't need Captain Dawkins in the middle. None of the Probe Team members were spraying OC at this time, and none of the inmates were throwing anything. Everyone was just standing still.

30. The next thing that Plaintiff recalls hearing was a code over the radio then an inmate stated that that code is a fighting code.

31. Upon information and belief, a new group of Probe Team members arrived, approximately 15 new Probe Team members. When the new Probe Team members arrived, they directed the inmates to face the wall and place their hands on the wall. Everyone complied with the order.

32. Upon information and belief, as the other inmates and Plaintiff were facing the wall, with their hands on the wall, in compliance with the order, Plaintiff could hear the officers "thumping heads" (assaulting) and taking inmates out one at a time.

33. It seemed to Plaintiff, that the officers were selectively targeting certain inmates in the line to assault.

34. Upon information and belief, Plaintiff was approximately 11th out of 12 inmates, facing the wall, with his hands on the wall. All of a sudden, Plaintiff felt a baton

6

strike him in the back of his head while his head was straight forward towards the wall, and his hands were still on the wall.

35. Prior to Plaintiff being stuck in the back of his head, no instruction was given.

36. Upon being hit with the baton, Plaintiff immediately fell to the floor and attempted to cover up his body.

37. One of the members of the first Probe Team that had responded, was a black male, defendant Cheatham, his partner was white, defendant Morh.

38. Upon information and belief, after Plaintiff was struck by the baton, Plaintiff heard the defendant Cheatham say, "I told you, you don't want it!" While Plaintiff was attempting to cover up, Plaintiff saw defendant Captain Levy trying to hit him in his ribs.

39. Upon information and belief, while Plaintiff was on the floor in a fetal position, attempting to shield himself, Plaintiff was kicked by defendants Cheatham, and/or Morh, and/or Captain Levy, and/or Unknown Correction Officer(s) about 4 to 5 times, blood began squirting out of his head and that is the only reason Plaintiff believes the defendant officers stopped beating him.

40. The officers pulled Plaintiff's hands behind his back, handcuffed him and took him downstairs into a corridor.

41. Plaintiff was placed on his knees facing the wall then Plaintiff believes he passed out. The next thing Plaintiff remembers was being in the pens (C71 intake area) with a white male asking, are you okay?

42. Plaintiff was placed on a gurney and taken to the medical clinic area. Someone notified EMS to come and get him; a doctor washed the side of Plaintiff's face because he had been sprayed with OC.

43. Plaintiff was transported to Elmhurst Hospital where he received medical treatment for his injuries. Plaintiff had an X-ray taken, and he was informed that he had a concussion.

44. Elmhurst Hospital used staples to close the back of Plaintiff's head at the place where defendant Cheatham, defendant Morh, defendant Captain Levy, or Unknown Correction Officer stuck Plaintiff with the officer's baton, while Plaintiff's hands were on the wall and Plaintiff was facing the wall in compliance with the last order given.

45. Plaintiff complied with the final order that was given to him. Immediately prior to him being assaulted by defendant Correction Officers, including, being hit in the back of his head with a baton, while in a defenseless position and posture of surrender, there was nothing that Plaintiff did that warranted him being hit.

46. Upon information and belief, for some time before Plaintiff was assaulted, the Probe Team had already established full control of the area where Plaintiff and the remaining inmates were located, and there were no safety or security issues.

47. The Probe Team's use of force was unnecessary, excessive and unjustified by the circumstances.

48. The City of New York through its agents, servants and employees, breached its duty to properly train, supervise, discipline or retain Correction Officers.

49. As a result of this incident, Plaintiff suffered, physical pain and bruises, a loss of consciousness, Plaintiff had to be go to the hospital where Plaintiff received

staples to close the laceration to the back of his head from defendant Cheatham, defendant Morh, defendant Captain Levy, or Unknown Correction Officer striking Plaintiff with his baton.

50. Upon information and belief, prior to October 11, 2013, the City of New York through its agents, servants and employees systematically violated the civil rights of males, including Plaintiff, held at Rikers Island by failing to protect them from the rampant use of unnecessary and excessive force by correction officers.

51. Upon information and belief, prior to October 11, 2013, the correction officers at Rikers Island, including, but not limited to, each defendant officer herein, engaged in excessive force against males held at Rikers Island, because defendant City of New York allowed a practice, policy, custom or culture for such excessive use of force by failing to appropriately punish, reprimand, correct, and or remove officers who engaged in such unlawful use of force.

52. Upon information and belief, prior to October 11, 2013, the correction officers at Rikers Island, including, but not limited to, each defendant officer herein, engaged in excessive force against males held at Rikers Island, because defendant City of New York allowed a practice, policy, custom or culture for such excessive use of force by failing to properly, truthfully and completely record and report incidents of violence by correction officers against males being held at Rikers Island.

53. Upon information and belief, prior to October 11, 2013, the correction officers at Rikers Island, including, but not limited to, each defendant officer herein, engaged in excessive force against males held at Rikers Island, because defendant City of New York allowed a practice, policy, custom or culture for such excessive use of force

9

by failing to implement an effective system for investigating and addressing incidents of violence by correction officers against males being held at Rikers Island.

54. Upon information and belief, prior to October 11, 2013, the correction officers at Rikers Island, including, but not limited to, each defendant officer herein, engaged in excessive force against males held at Rikers Island, by striking them in the head, face and body as punishment even when the inmates, like Plaintiff, posed no threat.

55. Upon information and belief, prior to October 11, 2013, the correction officers at Rikers Island, including, but not limited to, each defendant officer herein, engaged in excessive force against males held at Rikers Island, because such officers rarely received appropriate punishment even when there may have been evidence of significant violations.

56. Upon information and belief, between 2011 and 2013, the correction officers at Rikers Island seriously injured more than 90 inmates, including Plaintiff.

57. Upon information and belief, correction officers at Rikers Island, including, but not limited to, each defendant officer herein, engaged in excessive force against males held at Rikers Island, including Plaintiff, because they are allowed to engage in numerous uses of force over an extended period while receiving little, insignificant or no discipline.

58. Upon information and belief, the use of force by correction officers significantly increased between 2009 and 2014.

59. Moreover, by doing the above, supervisory officers, upon information and belief, acted in conformity with the City of New York's custom, practice, policy and or procedure of not properly documenting violations of prisoner's rights, failing to

adequately supervise subordinates, failing to discipline correction officers, and ensuring that correction officers, like defendant Cheatham, defendant Morh, defendant Captain Levy, and Unknown Correction Officer(s), are not held appropriately accountable for their actions.

60. By way of the foregoing, the City of New York through its agents, servants and employees, breached its duty to properly train, supervise, discipline or retain Correction Officers.

61. All of the physical contact between Plaintiff and defendant Cheatham, defendant Morh, defendant Captain Levy, and/or Unknown Correction Officer(s) was wrongfully initiated, and unjustifiably continued by defendant Cheatham, defendant Morh, defendant Captain Levy, and/or Unknown Correction Officer(s).

62. At no time during the above-described events did Plaintiff act in a manner to give defendant Cheatham, defendant Morh, defendant Captain Levy, and/or Unknown Correction Officer(s) justification to assault and beat Plaintiff or to use excessive force on Plaintiff.

63. Upon information and belief, Plaintiff filed a grievance at Rikers Island concerning the incidents that form the basis of this Complaint.

64. As a direct and proximate result of the above said acts of the defendants, Plaintiff suffered the following injuries and damages:

    a) Violation of his constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution, and under Article 1, Section 12 of the New York State Constitution, to be free from an unreasonable search and seizure of his person;

b)  Violation of his constitutional rights under the Fifth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 6 of the New York State Constitution, to not suffer the deprivation of his liberty or property without due process of law;

c)  Violation of his constitutional rights under the Eighth and Fourteenth Amendments of the United States Constitution, and Article 1, Section 5 of the New York State Constitution, to not suffer cruel and unusual punishment;

d)  Physical injury, pain, and suffering;

d)  Emotional trauma, distress, and suffering.

65. The actions of the individual defendants violated the following clearly established and well-settled constitutional rights of Plaintiff:

a)  Freedom from the use of excessive, unreasonable, and unjustified force against his person.

## FIRST CAUSE OF ACTION

66. Paragraphs 1 through 65 of this complaint are incorporated herein by reference as though fully set forth herein.

67. By way of their above-described actions, each of the defendants, acting under color of law, violated Plaintiff' rights under the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

68. Plaintiff claims damages against each defendant, under 42 U.S.C. § 1983, for the injuries set forth above, caused by the defendants' aforesaid violations of Plaintiff' constitutional rights under color of law.

## SECOND CAUSE OF ACTION

69. Paragraphs 1 through 65 of this complaint are incorporated herein by reference as though fully set forth herein.

70. Defendants utilized excessive force against Plaintiff, or caused excessive force to be used against Plaintiff, by way of defendants striking Plaintiff in the head with a baton, striking and kicking Plaintiff when he fell to the ground and remained in a fetal position, causing plaintiff to suffer pain, a loss of consciousness, and a laceration to his scalp, all of which required medical treatment from Elmhurst Hospital, due to defendants unlawfully utilizing excessive force against Plaintiff.

71. Plaintiff claims damages against each defendant, under 42 U.S.C. § 1983, for the injuries set forth above suffered by Plaintiff as a result of the above-described use of excessive force by the defendants.

### THIRD CAUSE OF ACTION

72. Paragraphs 1 through 65 of this complaint are incorporated herein by reference as though fully set forth herein.

73. Defendants utilized excessive force against Plaintiff, or caused excessive force to be used against Plaintiff, by way of defendants striking Plaintiff in the head with a baton, striking and kicking Plaintiff when he fell to the ground and remained in a fetal position, causing plaintiff to suffer pain, a loss of consciousness, and a laceration to his scalp, all of which required medical treatment from Elmhurst Hospital, due to defendants unlawfully utilizing excessive force against Plaintiff.

74. As a result of this use of excessive force by the defendants, Plaintiff suffered injuries as aforesaid and claim damages for said injuries.

### FOURTH CAUSE OF ACTION

13

75. Paragraphs 1 through 65 of this complaint are incorporated herein by reference as though fully set forth herein.

76. By way of their above-described actions, each of the defendants, acting under color of law, violated Plaintiff' rights under Article 1, Sections 5, 6 and 12 of the New York State Constitution.

77. As a result of this violation of Plaintiff' New York State constitutional rights, Plaintiff suffered injuries and claim damages for said injuries.

## FIFTH CAUSE OF ACTION

78. Paragraphs 1 through 65 of this complaint are incorporated herein by reference as though fully set forth herein.

79. Prior to October 11, 2013, it was the policy and/or custom of defendant City of New York to inadequately and improperly screen individuals applying to become New York City Correction Officers, thereby failing to adequately or accurately identify individuals who would be likely to commit constitutional violations against people with whom New York City Correction Officers were likely to come in contact or interact.

80. Prior to October 11, 2013, it was the policy and/or custom of defendant City of New York to allow correction officers to use excessive force against male inmates being held at Rikers Island, without holding them accountable for their actions.

81. Prior to October 11, 2013, it was the policy and/or custom of defendant City of New York to inadequately and improperly train and supervise New York City Correction Officers, including the individual defendant officers, thereby failing to adequately prevent, discourage, or reduce the possibility of constitutional violations on the part of its correction officers.

82. As a result of the above described policies and customs, defendant City of New York negligently screened, hired, trained, supervised, and retained the individual defendant officers as New York City Correction Officers.

83. Such negligent screening, hiring, training, supervision, and retention were the cause or causes of the violations of Plaintiff's rights alleged herein.

84. Plaintiff claim damages for the injuries set forth above, under 42 U.S.C. § 1983, against defendant City of New York due to their negligent screening, hiring, training, supervision, and retention of the individual defendant officers, which resulted in the violations of Plaintiff's rights as aforesaid.

## SIXTH CAUSE OF ACTION

85. Paragraphs 1 through 65 of this complaint are incorporated herein by reference as though fully set forth herein.

86. Prior to October 11, 2013 it was the policy and/or custom of defendant City of New York to inadequately and improperly screen individuals applying to become New York City Correction Officers, thereby failing to adequately or accurately identify individuals who would be likely to commit constitutional violations against people with whom New York City Correction Officers were likely to come in contact or interact.

87. It was the policy and/or custom of defendant City of New York to inadequately and improperly train and supervise New York City Correction Officers, including the individual defendant officers, thereby failing to adequately prevent, discourage, or reduce the possibility of constitutional violations on the part of its Correction Officers.

88. As a result of the above described policies and customs, defendant City of New York negligently screened, hired, trained, supervised, and retained the individual defendant officers as New York City Correction Officers.

89. Such negligent screening, hiring, training, supervision, and retention were the cause or causes of the violations of Plaintiff' rights alleged herein.

90. Plaintiff suffered injuries as set forth above as a result of defendant City of New York's negligent screening, hiring, training, supervision, and retention of the individual defendant officers, and claim damages against defendant City of New York for said injuries.

### SEVENTH CAUSEOF ACTION

91. Paragraphs 1 through 65 of this complaint are incorporated herein by reference as though fully set forth herein.

92. Defendants assaulted and battered Plaintiff, or caused Plaintiff to be assaulted and battered, by way of defendants striking Plaintiff in the head with a baton, striking and kicking Plaintiff when he fell to the ground and remained in a fetal position, causing plaintiff to suffer pain, a loss of consciousness, and a laceration to his scalp, all of which required medical treatment from Elmhurst Hospital, due to defendants unlawfully utilizing excessive force against Plaintiff.

93. As a result of this assault and battery by defendants, Plaintiff suffered the injuries as aforesaid and claim damages for said injuries.

### RELIEF

94. WHEREFORE, based upon all of the above, Plaintiff requests that this Court:

  a) Award compensatory damages to Plaintiff against the defendants, jointly and severally, in an amount to be determined by a jury;

  b) Award punitive damages to Plaintiff against the defendants, jointly and severally, in an amount to be determined by a jury;

  c) Award costs of this action to Plaintiff;

  d) Award attorney's fees under 42 U.S.C. § 1988, and costs to Plaintiff;

  e) Award such other and further relief as this Court may deem just and proper.

  95. Plaintiff hereby demands a jury trial.


Dated: September 11, 2015
   New York, NY

_____
Kavin L. Edwards
Attorney for Plaintiff
65 Broadway, 8th Floor
New York, New York 10006
212.405.1005

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | DOCKET NO.<br>ECF CASE |

JOHN ROBINSON, JR.,

Plaintiff

- against -

THE CITY OF NEW YORK, CORRECTION OFFICER
CAPTAIN DAVID LEVY, CORRECTION OFFICER JAVAR CHEATHAM,
CORRECTION OFFICER MARK MOHR and Unknown
Correction Officers of Rikers Island, in their individual
capacities and in their official capacities as employees
of the City of New York,

Defendants.

# AMENDED COMPLAINT

To: CITY OF NEW YORK
Corporation Counsel
100 Church Street
New York, NY 10007

C.O. CAPTAIN DAVID LEVY, C.O. JAVAR CHEATHAM, & C.O. MARK MOHR
New York City Correction Department
Anna M. Kross Center (AMKC)
18-18 Hazen Street
East Elmhurst, NY 11370

Service of a copy of the within is hereby admitted.

Dated:..........................

**PLEASE TAKE NOTICE** that the within is a true copy of the Amended Complaint duly entered in the office of the clerk of the within named court on September __, 2015.

Dated:  September __, 2015
        New York, NY

Yours, etc.,

Kavin L. Edwards
*Attorney for Plaintiff*
65 Broadway, 8th Floor
New York, NY 10006
212.405.1005